# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

VAN PHUNG V.,[1]

        Petitioner,

  v.

WARDEN OF THE GOLDEN STATE
MCFARLAND DETENTION FACILITY, et
al.,

        Respondents.

Case No. 1:25-cv-01870-JLT-SKO (HC)

**FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Van Phung V. is an immigration detainee proceeding with counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Doc. 1).  For the reasons detailed below, the Court will recommend the petition be granted.

## BACKGROUND

Petitioner is a citizen of Vietnam. On April 24, 2001, a final order of removal was issued to Petitioner. (Doc. 19 at 6.) He was released from immigration custody on an Order of Supervision in or about 2007. (Doc. 19 at 6.) He complied with the conditions of release and

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. See Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

lived in the community. (Doc. 19 at 6.)

On June 18, 2025, the Immigration and Customs Enforcement ("ICE") detained Petitioner. (Doc. 19 at 6.) Petitioner alleges he was taken into custody without meaningful notice or opportunity to challenge the revocation of release. (Doc. 19 at 6.)

Respondents state ICE is actively working to obtain a travel document for Petitioner to Vietnam. (Doc. 15 at 2.) Respondents also submit that Petitioner has received two custody reviews by immigration officers: one on September 29, 2025, and the second on January 29, 2026. (Doc. 22 at 1; 22-1.) At both custody reviews, Petitioner was denied release based on danger and flight risk. (Doc. 22-1.) Clearly, these determinations were made more than three months after re-detention.

In addition, there is no indication when Respondents requested a travel document to Vietnam with respect to his re-detention. Respondents only proffer that "ICE is actively working to obtain a travel document for Petitioner to Vietnam." (Doc. 15 at 2.) The Court can only assume that, like every other case the Court has reviewed in the recent past, any such request was only made *after* Petitioner was re-detained. To date, Vietnam has not issued a travel document.

On December 15, 2025, Petitioner sought his release though a writ of habeas corpus. On February 11, 2026, Petitioner filed a first amended petition on the following grounds: that Petitioner's prolonged detention violates the Due Process Clause of the Fifth Amendment because there is no significant likelihood of removal in the reasonably foreseeable future; and that Petitioner's re-detention without changed circumstances, without an individualized review, and without an assessment of likelihood of removal violated Petitioner's rights under statute and the Constitution. (Doc. 19 at 7-9).

Respondents filed a response on January 27, 2026, and a supplemental response on February 18, 2026. (Docs. 15, 22.) Petitioner filed a reply on February 19, 2026. (Doc. 23.)

The Court will start and end its review with Petitioner's second claim, since relief on that claim is clearly warranted.

/////

/////

2

**DISCUSSION**

**A.  Jurisdiction**

Before turning to the merits, the Court must first assure itself of jurisdiction.  See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577, 583 (1999).  Courts have long had jurisdiction to issue writs of habeas corpus to petitioners held in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C § 2241(c)(3).  In doing so, we carry out the "historic purpose of the writ," namely "to relieve detention by executive authorities without judicial trial."  Zadvydas, 533 U.S. at 699.  But the Supreme Court has consistently "rejected" any suggestion that section 1252(g) covers all claims arising from deportation proceedings or imposes a general jurisdictional limitation.  Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 19 (2020).  Had Petitioner sought to challenge the Government's decision to execute his removal order, it would indeed bar this Court's review.  But because Petitioner's due process claim contests only his detention resulting from violations of the Government's mandatory duties under certain statutes, regulations, and the Constitution, the Court finds that it has jurisdiction to determine the lawfulness of Petitioner's detention.  See Arce v. United States, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e have limited [section 1252(g)]'s jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders.").

**B.  Due Process**

Upon review, the Court finds that the Government has violated its own regulation, 8 C.F.R. § 241.13.  Section 241.13 provides "special review procedures" governing ICE's authority to revoke a removable alien's release in cases where, as here, ICE has (1) previously determined "that there is no significant likelihood of removal in the reasonably foreseeable future," and then (2) subsequently seeks to revoke release based on changed circumstances resulting in a "determin[ation] that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

First, to revoke a removable alien's release under section 241.13(i)(2), ICE must determine that the alien is significantly likely to be removed in the reasonably foreseeable future "on

3

account of changed circumstances."[2]  § 241.13(i)(2).  Here, the Government asserts it is actively working to obtain a travel document and believes that removal will be effectuated in the reasonably foreseeable future. (Doc. 15 at 2). The Government has submitted documentation that Petitioner has been granted two custody reviews. (Doc. 22-1.) However, the Government has not submitted any evidence that it made any determination regarding a change in circumstances prior to Petitioner's detention. Section 241.13(i)(2) "requires that this determination is made *before* the removable alien has had his release revoked." Tran v. Noem, No. 25-cv-2391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (emphasis added); see also Sphabmixay v. Noem, No. 25CV2648-LL-VET, 2025 WL 3034071, at *2 (S.D. Cal. Oct. 30, 2025); Phakeokoth, v. Noem, No. 3:25-CV-02817-RBM-SBC, 2025 WL 3124341, at *5 (S.D. Cal. Nov. 7, 2025); Nguyen, v. Noem, No. 25CV2792-LL-VET, 2025 WL 3101979, at *3 (S.D. Cal. Nov. 6, 2025) ("However, courts 'have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.. . . . This is so even when [] the Government has obtained a petitioner's travel document back to his or her country of origin after their re-detainment." (quoting Truong v. Noem, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025)).  The record thus shows that any changed-circumstances determination was apparently made well after Petitioner was re-detained on June 18, 2025.

In addition, there is no indication that the Government submitted a request to Vietnam for travel documents until after his re-detention.  And to the extent that the Government advances an argument that this kind of determination may be supported by evidence showing a general change in a country's policy of accepting removable aliens on a case-by-case basis, such arguments have been repeatedly rejected.  See, e.g., Phan v. Beccerra, No. 2:25-CV-01757-DC-JDP, 2025 WL 1993735, at *4 (E.D. Cal. July 16, 2025) ("Respondents contention that Petitioner's removal is reasonably foreseeable because removals to Vietnam are in fact occurring

---

[2] The Court notes that section 241.13(i)(1) provides another avenue for the Government to revoke release under section 241.13 in instances where an alien "violates the conditions of release."  But nowhere in the record does the Government purport to rely on this authority for the October 16, 2025, revocation of Petitioner's release, so the Court will not address this provision.

is unpersuasive" where "[p]re-1995 Vietnamese immigrants may be repatriated to Vietnam on 'a case-by-case basis'" and Vietnam has "discretion whether to issue a travel document to any individual." (quoting Hoi Thanh Duong v. Tate, No. 24-cv-04119-H, 2025 WL 933947, at *4 (S.D. Tex. Mar. 27, 2025))).  Therefore, the Court concludes based on this record that if ICE assessed a likelihood of Petitioner's removal before revoking his release, it could not have been "*on account of*" legally relevant changed circumstances pursuant to section 241.13(i)(2).  With "no evidence of an actual determination of changed circumstances that justified the initial revocation of [Petitioner's] release," the Court finds the Government has violated section 241.13(i)(2).  See, e.g., Sphabmixay, 2025 WL 3034071, at *2 (finding the same). Indeed, the evidence submitted indicates that any such determination was made at least three months after Petitioner's revocation of release. (Doc. 22-1.)

Second, even if the Government had made a determination based on legally sufficient "changed circumstances," the Court finds the Government also violated the section 241.13(i)(3)'s notice requirement.  Section 241.13(i)(3) sets forth "revocation procedures" governing revocation carried out pursuant to this section.  To revoke a removable alien's release under section 241.13(i)(3), an alien must "be notified of the reasons for revocation of his or her release" and those reasons must be "stated in the [written] notification." 8 C.F.R. § 241.13(i)(3); see Tran, 2025 WL 3005347, at *3 (holding that this "notice must be in writing and contain all the reasons for the revocation of the alien's release").

Here, Petitioner alleges he was never provided notice of his re-detention, and the Government has not submitted any evidence to the contrary. The Government's untimely actions fail to comport with the requirements of section 241.13 and Petitioner's due process rights.

Finally, even if the Court found the Government had made a legally sufficient determination of "changed circumstances" and that the Notice was sufficient under section 241.13(i)(3), the Court finds the Government also violated section 241.13(i)(3)'s opportunity to be heard requirement.  In addition to the notice provision, section 241.13(i)(3) requires ICE to "promptly," after re-detainment, conduct "an initial informal interview" to "afford the alien an opportunity to respond to the reasons for revocation."  Here, there is no indication that any such

5

interview was provided.  The Court, therefore, again finds the Government violated Petitioner's due process rights by not complying with its own rule under section 241.13(i)(3).  See Tran, 2025 WL 3005347, at *3 (finding the same); see also Grannis v. Ordean, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due process of law is the opportunity to be heard."); Niz-Chavez v. Garland, 593 U.S. 155, 172 (2021) ("If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them.").

The Government does not appear to dispute that it has failed to follow its own rules for re-detainment.  In fact, the Government does not address Petitioner's argument that his due process rights were violated by the Government failing to abide by section 241.13's requirements.

Courts "have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." Truong v. Noem, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases). Even if the Government were to obtain a travel document from Vietnam subsequent to re-detainment, Petitioner should be entitled to release. Id. at *1–6 (granting habeas and releasing the petitioner with a deportation order back on supervision when the respondents failed to comply with § 241.13(i) and § 241.4(l) despite later securing travel documents for his country of origin); Tran, 2025 WL 3005347, at *1–4 (same); Sphabmixay, 2025 WL 3034071, at *3; Phakeokoth, 2025 WL 3124341, at *5 ("Respondents also fail to specify whether ICE requested travel documents for Petitioner before or after his arrest.  Thus, ICE's revocation of Petitioner's release does not appear to have been 'on account of' changed circumstances.").  This Court should follow suit.

Because the Government was required to, but failed to comply with section 241.13(i) when it revoked Petitioner's supervised release on June 18, 2025, issuing a writ to reinstate that release is warranted to preserve the status quo before the Government's unlawful actions. The status quo ante litem is "the last uncontested status which preceded the pending controversy[.]" GoTo.com, Inc. v. Walt Disney, Co., 202 F.3d 1199, 1210 (9th Cir, 2000) (quoting Tanner

Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 809 (9th Cir. 1963)); see Ariz. Dream Act Coalition v. Brewer, 757 F.3d 1053, 1061 (9th Cir. 2014) ("the 'status quo' refers to the legally relevant relationship between the parties before the controversy arose") (citing McCormack v. Hiedeman, 694 F.3d 1004, 1020 (9th Cir. 2012)).

Here, Petitioner had been on supervised release for eighteen years until he was re-detained by the Government. Because Petitioner challenges his re-detainment, the last uncontested status of Petitioner was before he was re-detained on June 18, 2025. See Doe, 2025 WL 691664, at *2 ("It is questionable whether that status quo is properly considered to be detention when the Government suddenly took an allegedly unconstitutional action in rearresting Petitioner without a hearing."); Domingo-Ros v. Archambeault, No. 25-cv-01208-DMS-DEB, 2025 WL 1425558  (S.D. Cal. May 18, 2025) (granting an injunction for petitioners that sought a "probationary injunction" to "preserve the status quo preceding this litigation—their physical presence in the United States free from detention"); Pinchi v. Noem, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *3 (N.D. Cal. Jul. 4, 2025) (finding that the "moment prior to the Petitioner's likely illegal detention" is the status quo). Accordingly, the Court finds Petitioner's immediate release is required to return him to the status quo.

## RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED that the Petition for Writ of Habeas Corpus be granted, Respondents be ordered to release Petitioner, and Respondents be enjoined and restrained from re-detaining Petitioner unless they obtain a travel document for removal to Vietnam and abide by the procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and

Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014).  This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:    **February 20, 2026**                              /s/ *Sheila K. Oberto*

UNITED STATES MAGISTRATE JUDGE